IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EDWARD POWELL, :
:
       Plaintiff, :
:
       v. : C.A. No. 10-996-LPS
:
PERRY PHELPS, Warden, individually :
and in his official capacity, et al.. :
:
       Defendants. :

James E. Liguori, Esquire, and Melissa L. Dill, Esquire, Liguori & Morris, Dover, Delaware

    Attorneys for Plaintiff.

Devera B. Scott, Esquire, State of Delaware Department of Justice, Dover, Delaware

    Attorney for Defendants.

**MEMORANDUM OPINION**

March 23, 2015
Wilmington, Delaware.

![signature](Stark signature)

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff, Edward Powell ("Plaintiff"), a former inmate at the James T. Vaughn Correctional Center ("JTVCC"), filed this civil rights complaint against Warden Perry Phelps and other defendants (collectively, "Defendants") pursuant to 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12131 *et seq.*, and Delaware common law. Presently before the Court is Defendants' Motion for Summary Judgment on Plaintiff's federal law claims (D.I. 47), which is opposed by Plaintiff (D.I. 51). For the reasons that follow, the Court will grant in part and deny in part Defendants' motion

## II. BACKGROUND

On April 11, 2009, while an inmate at JTVCC, Plaintiff was involved in an incident in Chow Hall B. (D.I. 48 Ex. 1 at 7) During the incident, Plaintiff was handcuffed and carried out of the chow hall by Sgt. Abernathy and other officers who had responded to Sgt. Abernathy's call for assistance. (*Id.*) Plaintiff was removed from the chow hall and left with Sgt. Sroka,[1] who called for medical assistance while Sgt. Abernathy and the other officers returned to the chow hall. (*Id.* at 15) Plaintiff was eventually taken by stretcher to the infirmary, where he remained for several days. (*Id.*; D.I. 49 at 35) After the incident, Plaintiff was transferred to the Security Housing Unit ("SHU"). (D.I. 49 at 55-56) Plaintiff was confined to a wheelchair for his entire time in the SHU until he was released from JTVCC. (*Id.* at 41-42)

Plaintiff alleges that his rights under the Eighth Amendment of the United States

---

[1] Defendant Nicole Sroka is incorrectly named in the complaint and case caption as "Nichole Sroka." (D.I. 14) Her name was misspelled in the incident reports upon which Plaintiff based his hand-written *pro se* complaint.

1

Constitution were violated when Defendants Abernathy, Rose, Stoddart,[2] and Lambdin used excessive force during his handcuffing and removal from the chow hall. Plaintiff alleges that his Eighth Amendment rights were also violated by Defendant Sroka when she failed to protect him from injury. Plaintiff alleges further Eighth Amendment violations by Defendants Abernathy, Rose, Stoddart, and Travis[3] for being deliberately indifferent to his medical needs. Additionally, Plaintiff alleges that Defendant Phelps, the Warden of JTVCC, was personally liable for each of these constitutional violations by the officers at JTVCC.

Plaintiff also alleges a violation by Abernathy and Travis of his rights under Title II of the Americans with Disabilities Act. In addition to his federal claims, Plaintiff allege tort claims against Defendants Abernathy and Phelps for conduct arising out of the April 11, 2009 incident.[4]

Plaintiff filed a *pro se* complaint on November 19, 2010. (D.I. 2) On February 4, 2011, the claim against Defendant Carl Danberg was dismissed as frivolous. (D.I. 8) The remaining Defendants are: Warden Perry Phelps, Sgt. Paul Abernathy, Sgt. Nicole Sroka, Sgt. Keisha Travis, Officer Troy Rose, Officer Charles Stoddart, Officer Linda Lambdin, Officer Brain Ross, and Officer William Adams. Each Defendant is named in both his or her individual and official capacities.

---

[2]Charles Stoddart's name is misspelled in the complaint and case caption as "Charles Stoddard," a misspelling that Plaintiff picked up from the incident reports.

[3]At the time she was served, Defendant's legal name was Keisha Travis-Branch. (D.I. 13) She is named only as "Sgt. Travis" in the case caption, and is referred to as "Travis" throughout the briefs and, therefore, in this Memorandum Opinion as well.

[4]Other claims in the Complaint – against Carl Danberg, Commissioner of Corrections, and Officers Brain Ross and William Adams (neither of whom were served) – are not at issue in Defendants' motion.

2

## II. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal citation omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 594 (3d Cir.2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal citation omitted).

3

However, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986) (emphasis in original). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson,* 477 U.S. at 252.

When a defendant in a § 1983 action claims qualified immunity, the "first task is to assess whether the plaintiff's allegations are sufficient to establish the violation of a constitutional or statutory right at all." *Gruenke v. Seip,* 225 F.3d 290, 298 (3d Cir. 2000). If the allegations meet this threshold, then the Court must then determine whether the legal right violated was clearly established. *See id.* If the plaintiff "fail[s] to satisfy either inquiry, then the defendant is entitled to summary judgment." *Id.*

### III. DISCUSSION

#### A. Immunity

Defendants contend that the doctrine of sovereign immunity under the Eleventh Amendment protects them in their official capacities against Plaintiff's § 1983 claims. (D.I. 48

4

at 8-9) Plaintiff agrees that the Defendants are immune from suit in their official capacities under § 1983. (D.I. 51 at 5) As the Supreme Court has stated, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1991). Because Defendants cannot be sued in their official capacity for monetary damages under § 1983, and because Plaintiff only seeks monetary damages, Defendants' motion for summary judgment on the § 1983 claims against Defendants in their official capacity will be granted.

### B. Excessive Force

Plaintiff raises a 42 U.S.C. § 1983 claim based on alleged violations of his Eighth Amendment rights by use of excessive force when he was removed from the chow hall. In evaluating Plaintiff's excessive force claim arising out of a prison disturbance, there are two inquiries: a subjective prong and an objective prong. *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Under the subjective prong, "the core judicial inquiry is ... [w]hether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* Under the objective prong, the inquiry is whether the injury is more than *de minimis*. *See id.* Defendants seek summary judgment based on a lack of evidence satisfying the subjective prong.

Plaintiff alleges excessive force against four Defendants: Lambdin, Rose, Stoddart, and Abernathy. The Court addresses the record relating to each of these Defendants below.

#### 1. Officer Lambdin

Plaintiff was generally unaware of Officer Lambdin's role in the April 11, 2009 incident, stating in his deposition that "[s]he must have been in there with everybody that was pulling on

5

me" but otherwise not recalling anything about her. (D.I. 49 at 28-29) His allegations against Officer Lambdin focused on her name being in the report about the incident. (*Id.* at 44; *see also* D.I. 48 Ex. 1 at 10 (Officer Lambdin's incident report))

According to Officer Lambdin's deposition testimony, her primary involvement was in maintaining order and keeping other inmates from standing up during the incident. (D.I. 50 at 5-6) Specifically, she testified:

> I noticed that the other inmates from the building [were] standing up getting ready to come over to the situation. So I walked over there and I said, "Gentlemen, have a seat." They complied. They sat back down. So I stayed over there to contain that area. And that was the extent of it. I never said anything to Powell or anything.

(*Id.* at 5) Officer Lambdin's report is to the same effect. (D.I. 48 Ex. 1 at 10)

Plaintiff has not adduced evidence to create a genuine, material dispute as to Officer Lambdin's role. "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.* The record does not contain evidence from which a reasonable factfinder could find Officer Lambdin was personally involved in the use of force against Plaintiff. Accordingly, the Court will grant summary judgment to Defendant Lambdin on the excessive force claim.

### 2. Officer Rose

Certain Defendants have stated that Officer Rose was present in the chow hall when the

6

incident began, as he was running the chow hall. (D.I. 48 Ex. 1 at 12, 15, 19) Officer Rose testified that he was present when Plaintiff refused to follow Sgt. Abernathy's orders after Plaintiff failed to return to his assigned seat. (*Id.* at 19) He further stated that after Plaintiff was given warnings, Plaintiff yelled loudly to get cooperation from other inmates, after which Rose and Sgt. Abernathy "called for back up . . . and asked [Plaintiff] to put his hand behind his back to cuff up in which he did not comply." (*Id.*) Defendant Officer Stoddart testified that Officer Rose was not one of the officers who carried Plaintiff out of the chow hall. (*Id.* Ex. 2 at 6-7) Sgt. Abernathy, however, testified that Officer Rose did help carry Plaintiff out. (*Id.* Ex. 4 at 12)

For his part, Plaintiff testified that when he entered the chow hall using a cane, Officer Rose "was another one that was in there. They were all pulling on me like I was a stretch doll. They know I was disabled." (D.I. 49 at 30) In general, Plaintiff testified that the officers who removed him from the chow hall "started yanking on me and pulling on me" and "were yanking and pulling and carrying me outside and stretching me outside." (*Id.* at 34) Plaintiff further stated that he was "choking and gagging on [his] meal when they drug [sic] [him] and dropped [him] on [his] back." (*Id.* at 25) He also testified that "[o]ne of [the correctional officers] said, look at the scar on his back. I'm screaming, I'm in pain. You're hurting me. You're hurting me. Of course, the few people I know in there told them, [g]et off of him. You're hurting him. He's hurt. He's disabled. Leave him alone." (*Id.* at 35)

The record establishes a genuine dispute of material fact as to whether Officer Rose was personally involved in handcuffing and removing Plaintiff, as Plaintiff's and Sgt. Abernathy's testimony contends that he was. (D.I. 48 Ex. 4 at 12) Further, there is evidence from which a reasonable factfinder could find that the disturbance was minimal and no inmates were a threat to

7

the staff or to each other (D.I. 50 at 5), yet Officer Rose did not temper the severity of his response. *See Giles v. Kearney*, 571 F.3d 318, 328 (3d Cir. 2009) (listing these as among relevant factors in determining if force was excessive in prison disturbance). The evidence may support a finding that Officer Rose acted "maliciously and sadistically" to cause harm to Plaintiff during the handcuffing and removal. in violation of the Eighth Amendment. *See Hudson*, 503 U.S. at 5.

Accordingly, Officer Rose is not entitled to summary judgment on Plaintiff's excessive force claim against him.

### 3. Officer Stoddart

It is undisputed that Officer Stoddart was not present in Chow Hall B until he responded to Sgt. Abernathy's call for assistance. (D.I. 48 Ex. 2 at 4) Officer Stoddart testified that Plaintiff "wouldn't respond to the walking out so we each took a limb and took him out of the chow hall." (*Id.* at 6) He testified that Plaintiff was "sort of carried out parallel to the ground." (*Id.* at 7) Officer Stoddart added that he and the other officers "placed [Plaintiff] on the sidewalk because he refused to stand" and, after placing Plaintiff on the sidewalk, Officer Stoddart "[w]ent back in [the chow hall] to maintain control." (*Id.*)

Plaintiff's testimony relating to Officer Stoddart's involvement in his handcuffing and removal is essentially the same as his testimony about Officer Rose. (*See, e.g.*, D.I. 49 at 28 (stating that Officer Stoddart "followed orders right to the tee and jumped right in there with everybody else and started pulling and yanking on me and everything else hurting me"))

For the same reasons given above with respect to Officer Rose, the Court concludes that Officer Stoddart is also not entitled to summary judgment on the excessive force claim.

### 4. Sgt. Abernathy

Sgt. Abernathy testified that on April 11, 2009, Plaintiff "wouldn't follow orders" and "go to a table that he was assigned to." (D.I. 48 Ex. 4 at 6) He did not remember if Plaintiff had his cane that day. (*Id.* at 7-8) He further testified that when Plaintiff refused to get up, Sgt. Abernathy called for backup and other officers arrived, after which he and other officers grabbed Plaintiff by the arms and handcuffed Plaintiff. (*Id.* at 10-11) Sgt. Abernathy stated that Plaintiff was resisting, wrapping his legs around the table, but did not "swing at anybody." (*Id.* at 11-12) After handcuffing Plaintiff, Sgt. Abernathy carried Plaintiff out and sat him on the ground and then returned to the chow hall. (*Id.* at 12-13)

Plaintiff testified that he had previously been subjected to harassment by Sgt. Abernathy, including being refused food. (D.I. 49 at 18-19) He also testified that Sgt. Abernathy knew Plaintiff was disabled and in pain, and that he could not stand up and get his food himself. (*Id.* at 20) According to Plaintiff, Sgt. Abernathy called for assistance after Sgt. Abernathy forced him to stand up and get his own food on April 11, and Plaintiff was unable to move after doing so and then sitting down. (*Id.* at 32) The remainder of Plaintiff's testimony about Sgt. Abernathy overlaps with his testimony about Officers Rose and Stoddart, to the effect that Sgt. Abernathy was also involved with Plaintiff's removal from the chow hall. (*Id.* at 25)

Viewing the evidence in the light most favorable to Plaintiff, and for the same reasons given above, summary judgment cannot be granted on the excessive force claim against Sgt. Abernathy.

### C. Failure to Protect

Although Plaintiff's complaint contained a claim against Sgt. Sroka for a failure to

9

protect, his response to the motion for summary judgment did not contest Defendants' arguments on this claim. (D.I. 51 at 5-9 (contesting summary judgment on all other section 1983 claims against Defendants); *see also* D.I. 48 at 11-12 (arguing that summary judgment should be granted on this claim against Sgt. Sroka)) Because Plaintiff does not contest Defendants' motion for summary judgment on this claim, summary judgment will be granted for Defendant Sroka on Plaintiff's failure to protect claim.

### D. Medical Needs

To succeed on a claim under the Eighth Amendment for failure to provide medical treatment, Plaintiff must "demonstrate (1) that the defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Third Circuit has found deliberate indifference "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Id.* (citing *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993)). The Third Circuit has also found deliberate indifference "where the prison official persists in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'" *Id.* (quoting *White v. Napoleon*, 897 F.2d 103, 109-11 (3d Cir. 1990)).

Plaintiff's medical needs claims focus on three different sets of defendants in different factual circumstances: (1) a claim against Sgt. Abernathy alone arising out of events up to and including April 11, 2009; (2) claims arising out of the April 11, 2009 incident against Sgt. Abernathy, Officer Rose, and Officer Stoddart; and (3) a claim against Sgt. Travis during

10

Plaintiff's time in the SHU after April, 11, 2009. Each of these will be addressed in turn.

### 1. Claim against Sgt. Abernathy up to and including April 11, 2009

The basis of Plaintiff's claim against Sgt. Abernathy, predating and including April 11, 2009, is that Sgt. Abernathy was aware of Plaintiff's injuries and forced Plaintiff to stand in line and get his own tray. (*See* D.I. 49 at 54-59 (Plaintiff testifying about this pattern of conduct by Sgt. Abernathy)) Plaintiff specifically alleged that Sgt. Abernathy told him that he needed medical slips, and that Sgt. Abernathy "would not let [Plaintiff] see medical" to get these slips. (*Id.* at 55) He testified that he had a letter from his lawyer and that the medical staff had charts stating that he was disabled, but that Sgt. Abernathy forced him to stand up and get his food nonetheless. (*Id.* at 54) More particularly, Plaintiff testified that Sgt. Abernathy was told that Plaintiff was unable to get his tray due to his medical condition and his pain. (*Id.* at 20) Plaintiff contends that Sgt. Abernathy's actions exacerbated his injuries. (*Id.* at 54-55)

The Court concludes that the record reveals a genuine dispute of material fact as to whether Sgt. Abernathy was deliberately indifferent to Plaintiff's medical needs. A reasonable factfinder could conclude that Sgt. Abernathy "prevent[ed] Plaintiff from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197. Accordingly, the Court will deny the motion for summary judgment as it pertains to the medical needs claim against Sgt. Abernathy.

### 2. Claims arising out of the April 11, 2009 incident

Most of the evidence relating to the liability for Sgt. Abernathy, Officer Rose, and Officer Stoddart for violation of Plaintiff's Eighth Amendment rights for deliberate indifference to serious medical needs are essentially the same as those relating to excessive force, specifically that these Defendants were aware of Plaintiff's disability and pain as they removed him from the

11

chow hall. (*Id.* at 25, 30, 34-35) Additional relevant facts that a reasonable juror might find on the present record are: Sgt. Sroka testified that these Defendants dropped Plaintiff to the ground and walked away without calling for medical attention (D.I. 48 Ex. 5 at 7); Sgt. Abernathy testified that the officers who carried Plaintiff out did not call for medical attention (*id.* Ex. 4 at 13); and, after some time, a stretcher was obtained and Plaintiff did receive medical care for injuries (*id.* Ex. 5 at 7-8; D.I. 49 at 35).

A reasonable finder of fact could find that Sgt. Abernathy, Officer Rose, and Officer Stoddart were deliberately indifferent to Plaintiff's medical needs by "delay[ing] necessary medical treatment based on a non-medical reason." *Rouse*, 182 F.3d at 197. Based on Sgt. Sroka's testimony, a reasonable factfinder could find that medical treatment was delayed by these three Defendants dropping Plaintiff outside and making Sgt. Sroka call for medical attention. (D.I. 48, Ex. 5 at 7-8) Based on Officer Lambdin's testimony, a reasonable factfinder could find that there was no need for the three Defendants to return to the chow hall to maintain order. (D.I. 50 at 5) On this record, summary judgment on these medical needs claims is not warranted.

### 3. Claim against Sgt. Travis

Plaintiff's Eighth Amendment claim against Sgt. Travis focuses on her alleged denial of his recreation time while he was in the SHU due to having a wheelchair. Plaintiff's testimony focuses on Sgt. Travis's statements that he was not permitted to have outdoor recreation in a wheelchair. (D.I. 49 at 27) He also testified that he was not getting proper medical attention or medical care, but he did not testify that this was due to Sgt. Travis's actions.[5] (*Id.* at 41-42). Sgt.

---

[5]Plaintiff testified that he had filed another lawsuit, which was dismissed, in order to get medical treatment which had been denied to him. (D.I. 49 at 9-10) The Court takes judicial notice that this prior suit, *Powell v. Danberg*, 10-cv-558 (D. Del.), was dismissed for failure to

12

Travis testified that Plaintiff was allowed to have recreation time while in the SHU. (D.I. 48, Ex. 6 at 5) On this record, the Court will grant summary judgment for Defendant Travis on the medical needs claim, as no reasonable factfinder could find that Travis was deliberately indifferent to Plaintiff's medical needs.

### E. Warden Phelps's Liability Under § 1983

Defendants move for summary judgment on all of the claims against Warden Phelps on the ground that Plaintiff has failed to establish any personal involvement by Warden Phelps in any of the alleged deprivations of Plaintiff's rights. "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207 (internal citations omitted).

Plaintiff's claims against Defendant Phelps focus primarily on a conversation Plaintiff testified he had with Phelps. In the conversation, he "complained to Warden Phelps" about Sgt. Abernathy and explained that he was not getting fed. (D.I. 49 at 18-19) Plaintiff did not allege any involvement by Warden Phelps in the April 11, 2009 incident. Plaintiff's other testimony about Warden Phelps is that he wrote letters to explain he was being deprived of recreation time in the SHU. (*Id.* at 20-21)

The record plainly does not support personal involvement by Phelps with respect to any of the claims on which other Defendants are being granted summary judgment. Moreover, the record also does not provide a basis for a reasonable factfinder to find that Phelps was personally

prosecute on August 8, 2012 (*id.* D.I. 59, 60).

13

involved in those claims that have survived the summary judgment motion. A reasonable factfinder could not find that Phelps gave "personal direction" or had "actual knowledge and acquiescence" in the events of April 11, 2009 or in Plaintiff's medical needs relating to those events.

Accordingly, the Court will grant summary judgment to Defendant Phelps.

### F. ADA Title II Claims

To prove a violation of Title II of the ADA, Plaintiff must demonstrate that: (1) he is a qualified individual with a disability;[6] (2) he was excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *See* 42 U.S.C. § 12132; *Chambers ex rel Chambers v. School Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009).

Plaintiff's complaint seeks damages from Sgt. Abernathy and Sgt. Travis, in both their individual and official capacities, for violations of the ADA. In their motion for summary judgment, Defendants argue that they are immune for any violations in their individual capacities, because Title II does not authorize suits against individuals. (D.I. 48 at 18) Plaintiff, in his brief in opposition to summary judgment, concedes this point. (D.I. 51 at 10; *see also Jordan v. Delaware*, 433 F. Supp. 2d 433, 442 (D. Del 2006))

Plaintiff's ADA claims against Sgt. Abernathy and Sgt. Travis in their official capacities focus on two sets of events involving different and factual legal issues, which the Court

---

[6]Although Defendants, in their reply brief, contest whether Plaintiff is a qualified individual with a disability, they do not support their contention with any factual evidence, but instead admit that their motion is based on purported failings by Plaintiff on the other two prongs of the test. (D.I. 52 at 8)

14

addresses in turn below.

### 1. Sgt. Abernathy up to and including April 11, 2009

The record relating to this claim largely overlaps with that already discussed in connection with Plaintiff's medical needs claim against Sgt. Abernathy. According to Plaintiff's testimony, Sgt. Abernathy subjected him to harassment, forced him to stand up to get his food, and preventing him from being fed because he was unable to stand. (D.I. 49 at 18-19, 54-55) While there is evidence Defendant had a legitimate nondiscriminatory rationale for his alleged conduct, there remains a genuine dispute of fact as to the legitimacy of this rationale. (*See id.* at 18-19) A reasonable factfinder could find that Sgt. Abernathy prevented Plaintiff from obtaining food in the chow hall because Plaintiff was disabled. *See Chambers*, 587 F.3d at 189. Accordingly, summary judgment will be denied.

### 2. Sgt. Travis in the SHU after April 11, 2009

The record relating to this claim largely overlaps with that already discussed in connection with Plaintiff's medical needs claim against Sgt. Travis. Regarding this claim, Plaintiff testified that he "was told by Travis that I'm not allowed outside because I'm in a wheelchair." (D.I. 49 at 41) A reasonable factfinder could find that Sgt. Travis prevented Plaintiff from participating in outside recreation because he was disabled. Accordingly, summary judgment will be denied.

### G. Supplemental Jurisdiction

Because summary judgment has not been granted on all of Plaintiff's federal law claims, Defendants' request for the Court to decline to exercise supplemental jurisdiction over Powell's state law claims and dismiss those claims is moot.

15

## IV. CONCLUSION

Accordingly, for the foregoing reasons, Defendants' motion for summary judgment will be granted in part and denied in part. An appropriate Order follows.